(36 South 951.)

No. 15,258.

BALLARD v. PULESTON et al.*

(June 6, 1904.)

VOTERS—REGISTRATION—DOMICILE—CANCELLATION.

1. In order to entitle a person, otherwise qualified, to register as an elector, he must have been "an actual, bona fide resident" of the parish in which he proposes to register for one year.

2. A domicile, once acquired, remains until a new one is acquired, facto et animo.

3. Proceedings for the cancellation of an illegal registration are to be tried without costs.

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Robert R. Reid, Judge.

Action by John Ballard against John Puleston, registrar of voters, and others. Judgment for plaintiff, and defendant William W. Alford appeals. Affirmed.

Pierson, Walton & Pierson, Cage, Baldwin & Crabites, Kemp & Kemp, and Davidson &

---

*Rehearing denied June 29, 1904.

Ray, for appellant. Brittain Birdsong Purser and Benjamin Moore Miller, for appellee.

## Statement of the Case.

MONROE, J. On March 12, 1904, plaintiff filed a petition alleging, in substance, that the defendant Wm. W. Alford had registered as an elector of the parish of Tangipahoa on February 9, 1904, and that he was not then entitled to register, for the reason that he had not been a bona fide resident of the parish for a sufficient length of time, and he prayed that the registration be canceled. On March 17th a supplemental petition was filed, alleging that said Alford had again registered on the preceding day (March 16th), and reiterating in somewhat more specific terms the allegations of the original petition as to the date at which he had become a resident of the parish. To these petitions the defendant filed answers, alleging that the registration of February 9th was null by reason of noncompliance with the law, meaning, as it subsequently appeared, that his application was not entirely dated, written, and signed by himself, and further alleging that he had moved from New Orleans, where he had been living, and had established his domicile in Ponchatoula, in the parish of Tangipahoa, "during the last two or three days of February, 1903," and hence that his registration on March 16, 1904, was valid. It will at once be seen, from the defendant's allegation last above quoted, that whether his registration upon February 9, 1904, was or was not affected by the fact that the application had not been dated, written, and signed by him, it was certainly invalid for the reason that he had not then been a resident of the parish for 12 months; and it may be remarked, in the same connection, the application for registration on March 16th does not appear to have been entirely written, dated, and signed by the applicant, so that, if the first registration was invalid on that account, the second is equally so. It

is not, however, attacked, upon that ground, but solely upon the ground that the defendant did not establish his residence in the parish of Tangipahoa until about the 24th of June, 1903; and the other matter is referred to merely for the purpose of showing that the defendant may have had another reason for conceding the nullity of the registration of February 9th than the one assigned by him. Upon the issue whether the defendant moved to Ponchatoula, with the intention of establishing his domicile there, in February or in June, 1903, considerable testimony was taken, in which there is some conflict; for, whilst no attempt was made to sustain the allegation that he moved in February, an effort was made to overbear the testimony adduced by the plaintiff in support of the allegations of his petition by showing that defendant had moved early in the month of March.

The learned judge before whom the case was tried, after a careful analysis of all the evidence submitted to him, expresses himself as follows:

"The court concludes, from an examination of the whole testimony, that, beginning in the year 1902 at latest, Mr. Alford had a desire to return to his former home in the town of Ponchatoula; that he was without the means to do so, unless he could secure immediate employment in that place; that, about March, 1903, having some hope of obtaining employment of J. R. Abels, and his wife being frightened at the condition of the Mississippi river, and his father and mother having gone to Franklinton and left their house vacant, furnished, Alford carried his family to Ponchatoula, to sojourn there in the vacant house of his father, which would add nothing to his cost of living in New Orleans; and that Alford had the floating intention then, if he could secure employment in Ponchatoula, to return and establish his residence there; that, failing in the negotiations with Mr. J. R. Abels, and the salary offered to the marshal being only $35, and considered by him less than was necessary for the support of his family, he returned to the parish of Orleans, having still the desire, under suitable circumstances, to return to Ponchatoula and make it his home; that in the month of June, having received a proposition from the mayor of Ponchatoula to become their marshal at $50 per month, he at once accepted the proposition, secured a discharge from his employment with the electric company, and removed with his family to the town of Ponchatoula, and there established his residence; that, before he had received the appointment as marshal at $50 a month, he was desirous of making Ponchatoula his home, but, like Mahomet's coffin, was suspended midway between the earth of his necessities and the heaven of his desires. This floating intention of changing residence from one place to another, unaccompanied by an actual removal, did not operate a change of residence. The court concludes that the change of residence from New Orleans to Ponchatoula was made upon the 25th, 26th, and 27th of June, upon his arrival there with his family."

## Opinion.

We find no difficulty, after carefully considering the case as presented by the record, in adopting the conclusions thus stated. It is conceded that the defendant was domiciled in New Orleans, and it is shown by four unimpeached witnesses, relatives or friends of his wife and himself, that he was keeping house in New Orleans in June, 1903, in a dwelling which was furnished with the same furniture as in the preceding year. He was employed at that time by an electric company in New Orleans, and, whilst desirous of returning to Ponchatoula, was not in a position to abandon that employment until he secured some other. The mayor of Ponchatoula testifies, without contradiction, that in June he offered the defendant the position of town marshal, which the latter accepted after it had been agreed that the salary should be increased to $50 a month, and that, in so accepting, he inquired about a house for the accommodation of his family, and said that he would bring them up as soon as he could; and it is otherwise shown that his family and household effects arrived in Ponchatoula in the latter part of June, were accommodated for a few days at the house of Mr. Sutton, and then, about July 1st, were moved into a house rented from Miss Tucker. It is true that for a few weeks in March, and possibly at intervals between that time and the final move in June, the defendant's family occupied a furnished house in Ponchatoula, of which his father was les-

see; but the evidence fails to satisfy us, as it failed to satisfy the judge a quo, that such occupancy was anything more than mere sojourning.

"A domicile, once acquired, remains until a new one is acquired, facto et animo." Cole v. Lucas, 2 La. Ann. 946; Hyman v. Schlenker, 44 La. Ann. 108, 10 South. 623; McLean v. Janin, 45 La. Ann. 664, 12 South. 747; Succession of Simmons, 109 La. 1095, 34 South. 101; Marks v. Germania Savings Bank, 110 La. 659, 34 South. 725; Civ. Code, arts. 38, 41, 43.

In order to entitle a person otherwise qualified to register as an elector, he must have been an actual, bona fide resident of the parish in which he proposes to register for one year. Const. art. 197. The defendant files in this court a motion, with an affidavit attached, from which it appears that he has paid, under protest, to the clerk of the district court, the sum of $56.50 as costs for the transcript of appeal, and he prays that the clerk be condemned to refund the amount so paid. The charge was wholly unauthorized. Const. art. 201; Act No. 199, p. 461, of 1898, § 18. But the clerk is not before the court. The amount paid must, therefore, be recovered in another proceeding.

For the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment appealed from be affirmed; the rights of the defendant with respect to costs paid by him being reserved.